UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Laura Samarneh,<br><br>   Plaintiff,<br><br>   v.<br><br>Mercedes-Benz USA, LLC, et al.,<br><br>   Defendants. | No. 1:23-cv-00930-KJM-EPG<br><br>ORDER |

     Plaintiff Laura Samarneh alleges her Mercedes-Benz car did not measure up to the company's warranty despite many repair attempts at the Mercedes dealership. She filed this case against defendant Mercedes-Benz USA, LLC, for relief under the California Song-Beverly Consumer Warranty Act, the California Uniform Commercial Code and the federal Magnuson-Moss Warranty Act. Mercedes moves for summary judgment.

     After the parties filed memoranda in support of and in opposition to Mercedes's motion, *see generally* Mot., ECF No. 38; Opp'n, ECF No. 41; Reply, ECF No. 42, the California Supreme Court issued its opinion in *Rodriguez v. FCA US LLC*, 17 Cal. 5th 189 (2024). This court held oral argument, at which Sepehr Daghighian appeared for plaintiff, and Mehgan Gallagher appeared for Mercedes. *See* Mins., ECF No. 50. At argument, the court and the parties discussed the *Rodriguez* opinion extensively, as it clarified an ambiguity within the Song-Beverly Act. After hearing the parties' oral arguments, the court directed the parties to file a supplemental

1

1    opposition and reply, Order (May 16, 2025). That supplemental briefing is now complete, and
2    the court has now submitted the motion. *See generally* Suppl. Opp'n, ECF No. 54; Suppl. Reply,
3    ECF No. 55.

4    Under the familiar standard of Rule 56, Mercedes is entitled to summary judgment if it
5    shows "there is no genuine dispute as to any material fact" and it "is entitled to judgment as a
6    matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" under Rule 56 if "a reasonable jury
7    could return a verdict for the nonmoving party," i.e., Samarneh. *Anderson v. Liberty Lobby, Inc.*,
8    477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under
9    the governing law." *Id.* The parties must cite "particular parts of materials in the record." Fed.
10   R. Civ. P. 56(c)(1). The court then views the record in the light most favorable to Samarneh and
11   draws reasonable inferences in her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
12   475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

13   The court **grants in part and denies in part** Mercedes's motion under that standard, as
14   explained in this order.

15   **I.    SONG-BEVERLY ACT (CLAIMS 1–3)**

16   Samarneh's first three claims all arise under California's Song-Beverly Act, commonly
17   known as the "lemon law." It is simpler to begin with the relevant legal backdrop, rather than the
18   evidence. The Song-Beverly Act was originally passed over fifty years ago. *Rodriguez*,
19   17 Cal. 5th at 200; *see also* Cal. Civ. Code § 1790. It is a "remedial statute" that protects people
20   who have purchased products covered by express warranties. *Rodriguez*, 17 Cal. 5th at 200
21   (quoting *Robertson v. Fleetwood Travel Trailers of Cal.*, 144 Cal. App. 4th 785, 798 (2006)).
22   The state legislature added "motor vehicle provisions" to the Song-Beverly Act in the 1980s. *See*
23   *id.* at 201. Among other things, these provisions give people who buy "new" cars and trucks with
24   express warranties a "refund-or-replace remedy." *Id.* at 195. Manufacturers must "promptly
25   replace" a defective "new motor vehicle," or they must "promptly make restitution" if their
26   attempts to service and repair the "new motor vehicle" do not bring it into conformity with the
27   express warranty in question. Cal. Civ. Code § 1793.2(d)(2), (e).

1    Samarneh claims she is entitled to these remedies. *See* First Am. Compl. ¶¶ 48–63.
2    Mercedes contends she is not, and it seeks summary judgment to that effect. Their dispute boils
3    down to a disagreement about what is a "new motor vehicle" and what is not. The Song-Beverly
4    Act defines "new motor vehicle" in section 1793.22(e)(2). The phrase means more than just
5    brand new cars and trucks; among other things, it also means "a dealer-owned vehicle and a
6    'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." Cal. Civ.
7    Code § 1793.22(e)(2). "A demonstrator is a vehicle assigned by a dealer for the purpose of
8    demonstrating qualities and characteristics common to vehicles of the same or similar model and
9    type." *Id.*

10    Some parts of the definition of "new motor vehicle" are fairly clear: "dealer-owned" cars,
11    for instance, would count as "new motor vehicles" if sold with the manufacturer's new car
12    warranty. The definition gets murkier toward the end, with the catch-all reference to "other motor
13    vehicle sold with a manufacturer's new car warranty." *Id.* In isolation, that catch-all might
14    suggest any vehicle with an unexpired new-car warranty, even a used car purchased from a third-
15    party dealer or an individual private seller, would count as a "new motor vehicle." *See*
16    *Rodriguez*, 17 Cal. 5th at 197. Then again, the definition could also be narrower. It might be
17    limited to vehicles that are essentially new—but technically not new, like the demonstrators and
18    dealer-owned cars the statute specifically mentions—as long as a new-car warranty was issued at
19    the time of the sale. *See id.*

20    California appellate courts confronted this ambiguity soon after the statutory definition of
21    "new motor vehicle" was enacted. In 1989, a woman bought a BMW with more than 7,000 miles
22    on the odometer. *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 119 (1995). A salesman
23    told her the car had been used as a demonstrator for the dealership. *Id.* He also told her she
24    would be entitled to the manufacturer's 36,000-mile new-car warranty on top of the miles already
25    on the car. *Id.* Contrary to the salesman's claim, however, the car was not a demonstrator. *See*
26    *id.* at 120. It was used. *Id.* Brake problems soon surfaced. *See id.* Repairs efforts failed. *Id.*
27    The woman sued after her request for a refund or replacement fell on deaf ears. *See id.*
28    Eventually the case reached the California Court of Appeal. The court consulted the Song-

Beverly Act's text, its purposes and its legislative history, and it held that "cars sold with a balance remaining on the manufacturer's new motor vehicle warranty" are included in the definition of "new motor vehicle" of section 1793.22(e)(2). *Id.* at 123.

In the years that followed, however, opinions from the state's appellate courts show there were doubts about the reasoning in *Jensen*. In 2019, for example, one court asked, "would a car accompanied by a 20-year warranty still be a 'new motor vehicle' under the Song-Beverly Act on year 18?" *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340 n.4 (2019). The court did not read the statute so broadly. *See id.* Or as the Fourth District Court of Appeal had concluded a few years before, *Jensen* should be "read in light of the facts then before the court," especially the fact that a full new-car warranty was issued at the time of the sale. *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 923 (2015). But not all were so skeptical. Another state appellate court held that *Jensen* was "properly decided." *Stiles v. Kia Motors Am., Inc.*, 320 Cal. Rptr. 3d 640, 644 (Ct. App. 2024).[1]

The California Supreme Court took up the disagreement over the meaning of "new motor vehicle" in the *Rodriguez* case noted above, 17 Cal. 5th 189. The plaintiffs in *Rodriguez* had purchased a two-year-old truck from a used car dealer. *See id.* at 196. It had more than 55,000 miles on the odometer at the time. *See id.* Engine problems soon surfaced, and six repair attempts failed. *See id.* But the manufacturer's five-year, 100,000-mile limited warranty was still in effect, and the warranty covered the engine, transmission and drive system. *Id.* Relying on the unexpired warranty, the plaintiffs sued the manufacturer and sought either a replacement truck or restitution under the Song-Beverly Act. *Id.* The manufacturer argued the truck was not a "new motor vehicle," and the California Supreme Court agreed: "a motor vehicle purchased with an unexpired manufacturer's new car warranty does not qualify as a 'motor vehicle sold with a manufacturer's new car warranty' . . . unless the new car warranty was issued with the sale." *Id.* (quoting Cal. Civ. Code § 1793.22(e)(2)).

---

[1] As explained in the next paragraph, the California Supreme Court did not ultimately agree, so the Court of Appeal's opinion in *Jensen* is no longer precedential. *See* 323 Cal. Rptr. 3d 126 (Cal. 2024) (Mem.) (granting review); 328 Cal. Rptr. 3d 874 (Cal. 2025) (Mem.) (rendering *Jensen* not citable).

The court's opinion leaves no doubt this holding applies to "dealer-owned vehicles" and "demonstrators" just as well. It held that dealer-owned vehicles and demonstrators qualify as "new motor vehicles" specifically because "they are vehicles for which a new car warranty was *issued with* the sale" *Id.* at 198 (emphasis in original) (citation and quotation marks omitted). But the court's reasoning also shows a warranty can count as a warranty "issued with the sale" even if it is not a "full" warranty. *Id.* at 189–90. "The key point," the court wrote, agreeing with the defendant manufacturer in this respect, is that "the *first* customer to purchase or lease a demonstrator or dealer-owned vehicle receives a *new* warranty arising in *that* transaction, directly from the manufacturer." *Id.* (emphasis in original). "In other words, a warranty in this context is a guarantee made by the manufacturer to a retail buyer. Before a sale transaction, there is no such warranty to speak of; the manufacturer or its dealer representative owns the car." *Id.* at 199. So when the court clarified a car is not a "new motor vehicle" for purposes of the Song-Beverly Act "unless the new car warranty was issued with the sale," *id.* at 196, it was referring to the first time a warranty was issued to a retail buyer. "The sale of a dealer-owned vehicle or demonstrator to a retail buyer is what gives rise to a new car warranty." *Id.* at 199.

In this case, Samarneh leased her car, a 2019 Mercedes A220W, from an authorized Mercedes dealer in 2020 when the car had 4,320 miles on the odometer. *See* Stip. Facts ¶¶ 1–2, ECF No. 38-13. Before Samarneh leased the car, the dealership—which is a separate entity from Mercedes, and not a defendant in this case—had owned and used it as a "loaner." *See id.* ¶ 6. The dealership leased the car to Samarneh as "pre-owned." *Id.* ¶ 4. Mercedes provides a "fully transferrable," four-year, 50,00-mile warranty, and Mercedes agrees that warranty covers Samarneh's car. *See id.* ¶ 9; Mot. at 5. Although on its face the warranty began on September 30, 2019, the date of the original sale to the third-party dealership, which was several months before Samarneh's lease began, there is no dispute but that Samarneh was the first retail customer who benefitted from the warranty's terms; the dealer was the only previous owner. *See* Stip. Facts ¶ 11; Murray Decl. Ex. B, ECF No. 41-3. The warranty thus was "issued with the sale" under *Rodriguez*. For that reason, the car is a "new motor vehicle" under the Song-Beverly Act.

5

1    Mercedes argues otherwise, first citing a decision by another California federal district
2 court. *See* Suppl. Reply at 1 (citing *Grismore v. Mercedes-Benz USA, LLC*, 710 F. Supp. 3d 828,
3 834 (C.D. Cal. 2024), *aff'd* No. 24-672, 2024 WL 5001469 (9th Cir. Dec. 6, 2024)
4 (unpublished)). But in that case, the plaintiff did not show her car was covered by a warranty.
5 710 F. Supp. 3d at 834. The evidence showed instead it was "a used service loaner that was not
6 covered by a [Mercedes] warranty" at all. *Id.* at 835; *see also* 2024 WL 5001469, at *2 (affirming
7 and noting the "lease states that the vehicle was 'pre-owned' and was not covered by a
8 warranty."). And unlike Samarneh, the plaintiff in *Grismore* did not argue her vehicle qualified
9 as a "new motor vehicle" under the Song-Beverly Act as a "dealer owned vehicle." 2024 WL
10 5001469, at *1 n.2.

11    Mercedes also argues that a car is not a "new" car unless it was sold with a "full"
12 warranty, quoting and citing passages from the intermediate appellate opinion the state supreme
13 court later affirmed in *Rodriguez*. *See, e.g.*, Suppl. Reply at 1. As summarized above, the state
14 supreme court wrote that it was unnecessary to decide whether demonstrators and dealer-owned
15 cars come with "full" warranties because "a warranty in this context is a guarantee made by the
16 manufacturer to a retail buyer," regardless of whether it can be characterized as "full."
17 17 Cal. 5th at 199. If there is any conflict between the state supreme court's reasoning and the
18 intermediate appellate decision it affirmed, this court is bound to follow the state supreme court's
19 opinion. *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268,
20 1278 (9th Cir. 2013) (agreeing federal courts are not bound by intermediate appellate court
21 decisions when "a state's highest court" has addressed the issue); *Muniz v. United Parcel Serv.,*
22 *Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) ("Decisions of the California Supreme Court, including
23 reasoned dicta, are binding on us as to California law.").

24    With this foundational dispute settled, the court must now determine whether Mercedes,
25 the moving party, is "entitled to judgment as a matter of law" on each of Samarneh's three claims
26 under the Song-Beverly Act. Fed. R. Civ. P. 56(a).

27    In her first claim, Samarneh argues Mercedes is liable under an express warranty. *See*
28 First Am. Compl. ¶¶ 48–63. Mercedes's only argument for summary judgment of this claim is its

6

1    contention that her car was not a "new motor vehicle." See Mot. at 8–14. That argument is
2    unpersuasive for the reasons set forth above. The court denies Mercedes's motion in part with
3    respect to claim one.

4        Samarneh's second claim asserts a breach of an implied warranty. First Am. Compl.
5    ¶¶ 64–75 (citing Cal. Civ. Code § 1792). Mercedes argues Samarneh cannot pursue this claim
6    "because in the sale of used consumer goods, liability for breach of implied warranty lies with
7    distributors and retailers, not the manufacturer," quoting a case about a three-year-old used car.
8    Mot. at 14 (quoting *Nunez v. FCA US LLC*, 61 Cal. App. 5th 385, 399 (2021)). As explained
9    above, Samarneh's car qualifies as a "new motor vehicle" under section 1793.22(e)(2). And as
10   the California Supreme Court wrote in *Rodriguez*, the state legislature "has maintained a
11   distinction between 'new' and 'used' products and has specified the warranty protections
12   applicable to each category." 17 Cal. 5th at 202. Mercedes has not explained how, given that
13   distinction, Samarneh's car could be "new" for some purposes but "used" for others; its motion is
14   better understood as advancing a unified argument that Samarneh's car is a "used" car for all
15   relevant purposes. The court cannot agree and therefore denies the motion in part with respect to
16   claim two as well.

17       In her third claim, Samarneh argues Mercedes violated section 1793.2 of the Civil Code, a
18   provision of the Song-Beverly Act that imposes repair and servicing obligations on manufacturers
19   and their representatives. See First Am. Compl. ¶¶ 76–95. Mercedes argues a plaintiff cannot
20   pursue a successful claim under this section without evidence showing a specific repair took more
21   than thirty days, citing many decisions in which other courts have imposed that requirement. See
22   Mot. at 16–17 & n.6 (collecting authority). Courts also have often refused to allow repair time to
23   accumulate over multiple repair attempts. See, e.g., *Schick v. BMW of N. Am., LLC*,
24   801 F. App'x 519, 521 (9th Cir. 2020) (unpublished); *Ortega v. BMW of N. Am., LLC*, No.
25   18-06637, 2019 WL 9044692, at *4 (C.D. Cal. Oct. 16, 2019). Samarneh cites no case in which
26   any court has accepted her cumulative repair theory of liability, and the court's own searches
27   have yielded none. The court grants Mercedes's motion in part with respect to claim three.

## II.   COMMERCIAL CODE (CLAIM 5)

Beyond the "enhanced remedies" of the Song-Beverly Act, buyers also can rely on the "remedies otherwise available in contract under the California Uniform Commercial Code." *Rodriguez*, 17 Cal. 5th at 195 (quoting *Niedermeier v. FCA US LLC*, 15 Cal. 5th 792, 810, 811 (2024)). Samarneh asserts such a claim in this case, for breach of express warranty, in her fifth claim for relief. First Am. Compl. ¶¶ 117–25 (citing Cal. Com. Code § 2313). Mercedes seeks summary judgment of this claim as well.

Mercedes first focuses on the undisputed fact that Samarneh leased her car under an agreement with the dealer, not with Mercedes itself. *See* Mem. at 19. Based on that fact, Mercedes argues she cannot succeed in asserting her warranty claim, as she could not establish "privity of contract," i.e., a contracting relationship with Mercedes, citing the California Supreme Court's decision in *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954). Mem. at 19. In *Burr*, however, the state court was interpreting a previous version of the California Civil Code, not its modern Commercial Code, and the plaintiff had asserted a claim based on an implied warranty rather than an express warranty. *See* 42 Cal. 2d at 695–96. The court's opinion in *Burr* also acknowledges a number of exceptions to the "general rule" of contractual privity, and those exceptions apply specifically to disputes about express warranties, such as this one. *See id.* For these reasons, *Burr* does not support Mercedes's position.

The remainder of Mercedes's privity argument likewise rests on cases about implied warranties and section 2314 of the state's Commercial Code, not express warranties or claims under section 2313. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 & n.6 (1988), in turn citing section 2314 and discussing implied warranties of merchantability); *Neu v. FCA US, LLC*, No. 23-00509, 2023 U.S. Dist. LEXIS 204079, at *7 (C.D. Cal. Nov. 13, 2023) ("In California, the general rule is that privity of contract is required in an action for breach of implied warranty . . . ."); *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 913–14 (E.D. Cal. 2018) ("[I]mplied warranty claims under the California Commercial Code still require privity of contract."). Again, because these cases were disputes about implied warranties, they do not

8

1   support Mercedes's position, as Samarneh does not assert an implied warranty claim under the
2   Commercial Code.  In short, with respect to its privity argument, Mercedes has not carried its
3   "initial burden of production" at summary judgment.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
4   *Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

5   As Mercedes correctly points out, however, Samarneh would be entitled to a remedy
6   under the Commercial Code only if she also proved at trial that Mercedes actually breached an
7   express warranty, among other things.  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213,
8   1227 (2010) (quoting *Keith v. Buchanan*, 193 Cal. App. 3d 13, 20 (1985)).  Mercedes contends
9   Samarneh could not prove the company breached its warranty.  *See* Mem. at 20–21.  In response,
10  to survive summary judgment, Samarneh must produce "enough evidence to create a genuine
11  issue of material fact."  *Nissan Fire*, 210 F.3d at 1103 (citing *Celotex Corp. v. Catrett*, 477 U.S.
12  317, 322 (1986).  If she does, then she "defeats the motion."  *Id.* (citing *Celotex*, 477 U.S. at 322).

13  Samarneh has cited evidence that could show she brought her car to the dealer many times
14  over several years, often because its electronics or electrical components had failed or
15  malfunctioned: there was a faulty fuel door actuator, a buzzing display screen, damaged wiring in
16  the driver's seat, a failing battery, and ultimately a broken control unit in the passenger door that
17  prevented the windows, locks, and mirror controls from working on the passenger side, which
18  defied the dealer's attempt at a fix.  *See* Blasjo Decl. ¶¶ 21–33, ECF No. 41-5.  It was only after
19  these many problems that Samarneh declined the dealer's offer to try more testing.  *See* Bauman
20  Decl. at 5, ECF No. 38-11.  Samarneh also has engaged an expert in automotive servicing who
21  would testify at trial that the car's repair history was "not reasonable" and that the car was neither
22  "of the same quality of other vehicles in the same category and class" nor "fit for the purpose it
23  was purchased."  Blasjo Decl. ¶ 33.  At this stage, the court must take this evidence in the light
24  most favorable to Samarneh, and it must draw reasonable inferences in her favor.  *Matsushita*,
25  475 U.S. at 587–88; *Adickes*, 398 U.S. at 157.  A reasonable jury could find, based on the
26  evidence summarized above, that Mercedes breached its express warranty, so Mercedes is not
27  entitled to summary judgment on the basis of its arguments about the alleged breach.

Mercedes next advances several arguments about the available remedies. It argues first that Samarneh is limited to the remedies available to buyers who have accepted the allegedly defective or non-conforming products. *See* Mem. at 19–20. In Mercedes's estimation, Samarneh accepted the car, and she could not prove she revoked her acceptance or otherwise rejected it now, as too much time has passed. *See id.* (citing Cal. Comm. Code §§ 2602, 2608). California courts have indeed held that "a buyer who unreasonably delays might lose the right under the Commercial Code to reject or revoke acceptance." *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 300 n.2 (1995). Samarneh argues she revoked her acceptance in May 2023, when she asked Mercedes to "repurchase or replace" her car, and she argues the judicial complaint she filed in this case a month later, in June 2023, revoked her acceptance as well. Opp'n at 21 (citing Murray Decl. ¶ 14; First Am. Compl. ¶ 41). Mercedes cites no authority and no evidence to show this timeline amounted to an unreasonable delay under the terms of the Commercial Code. *See* Reply at 9–10. The court will not supply citations or authority when Mercedes has not, but the law appears to leave this question to the jury in any event. *See, e.g.*, J. Council of Cal. Civil Jury Instr. No. 1243 (Series 100-2500 Nov. 2024) ("A reasonable time [under the Commercial Code] depends on the circumstances of the case. In determining whether notice was given within a reasonable time, you must apply a more relaxed standard to a retail consumer than you would to a merchant buyer.").

In addition, as Mercedes acknowledges, even if a buyer has accepted the disputed goods, that buyer can recover "the difference between the value of the goods accepted by the buyer and the value of the goods had they been as warranted." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006); *see also* Cal. Com. Code § 2714(2) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."). The current record does not establish what those damages would be.

Relatedly, Mercedes contends Samarneh cannot seek "rescission" as a remedy by way of her Commercial Code claim. *See* Mem. at 21–22. The cases it cites are largely uninformative.

10

Both relate to the remedies available in fraud cases. *See id.* (citing *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liability Litig.*, No. 18-2814, 2019 WL 7185524, at *6 (C.D. Cal. Oct. 29, 2019) and *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 935 (2011)). Nonetheless, the court need not engage this argument further. Samarneh conspicuously omits "rescission" from the remedies she seeks for violations of the Commercial Code. *Compare, e.g.*, First Am. Compl. ¶ 74 (seeking "rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711" in connection with the Song-Beverly implied warranty claim) *with id.* ¶ 124 (seeking "compensatory, consequential, and incidental damages in an amount yet to be determined, plus interest thereon at the legal rate" in connection with the Commercial Code claim). Her counsel confirmed at hearing she is not seeking rescission. Hr'g Tr. at 15, ECF No. 52. Because Samarneh does not seek "rescission" under the Commercial Code, it is not necessary to decide whether she could.

Finally, Mercedes argues Samarneh cannot recover consequential or incidental damages. *See* Mem. at 23. It cites its express warranty, which provides the warranty does not cover "loss of time, inconvenience, loss of use of the vehicle, or other incidental or consequential damages." Warranty Manual at 40, Gallagher Decl. Ex. F, ECF No. 38-10. Warrantors can indeed limit their damages. *See* Mot. at 23 (citing Cal. Com. Code § 2719(1)(a)).[2] Samarneh does not argue otherwise. *See* Opp'n at 19. The court therefore agrees with Mercedes that Samarneh cannot recover consequential or incidental damages for the alleged violations of the California Commercial Code.

In sum, the court grants Mercedes's motion for summary judgment on claim five in part, but only to the limited extent that Samarneh is not entitled to incidental or consequential damages for any violations of the California Commercial Code that she may ultimately prove. Mercedes has otherwise not demonstrated it is entitled to summary judgment with respect to claim five.

---

[2] The Ninth Circuit's decision in *In re Mesa Business Equipment, Inc.*, 931 F.2d 60 (9th Cir. 1991), which Mercedes cites in its memorandum, is an unpublished table decision that "may not be cited to the courts of this circuit" in most circumstances. *See* Ninth Cir. R. 36-3(c). The court has not considered it.

### III.  MAGNUSON-MOSS WARRANTY ACT (CLAIM 4)

In her fourth claim, Samarneh relies on the federal Magnuson-Moss Warranty Act. She may pursue this federal claim at trial in parallel with her claims under state law. *See, e.g.*, *Hastings v. Ford Motor Co.*, 495 F. Supp. 3d 919, 925 (S.D. Cal. 2020) (permitting a Commercial Code claim to support a federal Magnuson-Moss claim (citing *Scott v. Jayco Inc.*, 443 F. Supp. 3d 1143, 1151 (E.D. Cal. 2020))); *Orichian v. BMW of N. Am., LLC*, 226 Cal. App. 4th 1322, 1332 (2014) (agreeing a "count under Magnuson-Moss for breach of written warranty" could be "based on the California Uniform Commercial Code"). She also may seek state-law remedies for any breaches under the federal statute. *See, e.g.*, *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1241 (C.D. Cal. 2005) ("[C]ourts have looked to state law for guidance on remedies under the Magnuson–Moss Act . . . because Congress chose not to include remedial provisions in the Act.").

The parties disagree whether Samarneh can prove two elements of her federal claim at trial. First, they disagree whether she permitted Mercedes an opportunity to correct the alleged defect, as required. *See* 15 U.S.C. § 2310(e) ("No action . . . may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply."). It is undisputed, however, that Samarneh brought her car to an authorized Mercedes dealer for repairs on many occasions during her lease, as summarized above, which could show Samarneh allowed Mercedes a reasonable opportunity to correct the alleged problems. Second, the parties disagree whether Samarneh could show she was "damaged" by Mercedes's failure to comply with a warranty obligation, as required by 15 U.S.C. § 2310(d). A jury could interpret the record as showing problems with the car's electronics and electrical systems persisted despite the dealership's repair attempts, which could show Samarneh was damaged. These are genuine disputes of material fact.

Mercedes also argues it is entitled to summary judgment of Samarneh's federal claim because she did not participate in the company's informal dispute resolution program. Mercedes relies on 15 U.S.C. § 2310(a), which sets out Congress's policy in favor of informal dispute

1  resolution and the parameters of a compliant dispute resolution program. Federal regulations
2  adopted under that section require the warrantor to disclose information about its informal dispute
3  resolution program "on the face of the written warranty." 16 C.F.R. § 703.2(b). If the warranty is
4  "part of a longer document, such as a use and care manual," then "on the face of the warranty"
5  means the disclosure must be on "the page in such document on which the warranty text begins."
6  *Id.* § 703.1(h)(2).

7  The warranty in this case is part of a booklet. *See* Mercedes-Benz Service and Warranty
8  Information 2019, Shippen-Murphy Decl. Ex. C, ECF No. 41-4. The warranty text starts at the
9  beginning of the booklet. *See id.* at 14 of 103. The booklet does not mention the informal dispute
10 resolution procedure until near the end, on page 95 out of 103. This is not "on the face of the
11 warranty," as the law defines that phrase. Mercedes does not dispute that it must comply with
12 this regulation. It cites no case in which any court has blessed a similarly buried disclosure. As
13 Samarneh notes, other district courts have held that even less obscure disclosures fall short of
14 what the federal law and regulations require. *See Carrillo v. BMW of N. Am., LLC*, 543 F. Supp.
15 3d 856, 861–62 (C.D. Cal. 2021) (citing *Freas v. BMW of N. Am., LLC*, 320 F. Supp. 3d 1126,
16 1133–34 (S.D. Cal. 2018)).

17 For these reasons, Mercedes has not shown it is entitled to summary judgment on
18 Samarneh's claim under the Magnuson-Moss Warranty Act. The court denies the motion in part
19 with respect to claim four.

20 **IV.    CONCLUSION**

21 The motion for summary judgment (ECF No. 38) is **granted in part** as to claim three. The
22 motion is also **granted in part** with respect to claim five, but only to the limited extent that
23 Samarneh is not entitled to incidental or consequential damages for any violations of the
24 California Commercial Code that she may ultimately prove. The motion is **otherwise denied**.

25 A final pretrial conference is **set for August 7, 2025** at 10:00 am in Courtroom 3 at 501 I
26 Street, Sacramento, California, 95814. The parties shall meet and confer and file a joint pretrial
27 statement no less than 14 days prior to the final pretrial conference. The provisions of Local Rule
28 281 shall apply with respect to the matters to be included in the joint pretrial statement. At least

one of the attorneys who will conduct the trial for each of the parties shall attend the final pretrial conference. All motions in limine must be filed in conjunction with the joint pretrial statement. In most cases, motions in limine are addressed and resolved on the morning of the first day of trial. The parties may alert the court at the final pretrial conference and in their final joint pretrial statement that a particular motion or motions should be resolved earlier. At the final pretrial conference, the court will set a briefing and hearing schedule on the motions in limine as necessary. The parties are reminded that a motion in limine is a pretrial procedural device designed to address the admissibility of evidence. The court looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial in the guise of motions in limine.

This order resolves ECF No. 38.

IT IS SO ORDERED.

DATED: June 18, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE